**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

AFM
F. #2017R01305

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 17, 2024

By ECF

The Honorable William F. Kuntz
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: United States v. Vladimir Kuznetsov
Criminal Docket No. 21-CR-99 (WFK)

Dear Judge Kuntz:

The government respectfully submits this sentencing memorandum in advance of defendant Vladimir Kuznetsov's sentencing hearing, which is scheduled for April 30, 2024 at 2:00 p.m.. For the reasons set forth below, the government respectfully requests that the Court impose a sentence of between 46 and 57 months' imprisonment. Such a sentence would be sufficient, but not greater than necessary, to achieve the goals of sentencing in this case.

I. Background

The defendant's conduct is set forth in the U.S. Probation Department's ("Probation") Presentence Investigation Report, dated December 7, 2021 ("PSR"), subject to addenda disclosed on January 24, 2022; April 15, 2024; and April 17, 2024.[1]

In May 2017, federal law enforcement agents became aware that the defendant was attempting to ship export-controlled rifle parts and accessories to individuals in Russia. PSR ¶ 11. On four occasions, officers with Customs and Border Protection ("CBP") intercepted packages that the defendant was sending to recipients in Russia. PSR ¶¶ 12-24. The packages contained rifle parts and firearms accessories that were collectively worth thousands of dollars. The defendant had not obtained a license to export these items. PSR ¶¶ 13, 16, 19, 23.

The defendant was aware that these exports required a license, as evidenced by his receipt of numerous notices to that effect. PSR ¶¶ 14, 17, 18, 21, 24. Moreover, the manner

[1] In its April 17, 2024 addendum to the PSR, for reasons further discussed below, the Probation Department substantially revoked the revised Guidelines calculations contained in its April 15, 2024 addendum. The government agrees that this revocation was proper.

in which the items were shipped evinced a clear intent to evade detection by customs authorities. For example, on one occasion, a rifle stock was hidden within the packaging of a router table; the accompanying manifest listed the router table but made no mention of the rifle stock. PSR ¶ 15. The defendant prepared detailed shipping manifests that accompanied his shipments, but these manifests never disclosed the presence of weapons parts and accessories inside. A review of the defendant's email communications revealed that the defendant was in the business of receiving orders from Russia-based individuals, using funds provided by those individuals to buy export-controlled firearm parts in the United States, and then shipping those parts abroad. PSR ¶¶ 24-25.

On August 1, 2019, the defendant was charged by complaint in the Eastern District of New York with violating and conspiring to violate the Arms Export Control Act ("AECA"), 22 U.S.C. § 2778, and the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705. ECF No. 1. On April 27, 2021, the defendant pled guilty before this Court to an information charging a single count of violating the AECA. ECF No. 33.

## II. Applicable Law

The Supreme Court has instructed that a district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." Gall v. United States, 552 U.S. 38, 49 (2007) (citation omitted).

Next, a sentencing court should "consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, [it] may not presume that the Guidelines range is reasonable. [It] must make an individualized assessment based on the facts presented." Id. at 50 (citation and footnote omitted). Title 18, United States Code, Section 3553(a) provides, in part, that in imposing a sentence, a court shall consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; [and]
>
> (2) the need for the sentence imposed--
>
> > (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> >
> > (B) to afford adequate deterrence to criminal conduct; [and]
> >
> > (C) to protect the public from further crimes of the defendant.

Section 3553 also recognizes the need to afford the defendant opportunities for rehabilitation. See 18 U.S.C. § 3553(a)(2)(D). Thus, the Court must first calculate the correct Guidelines range, and then apply the 3553(a) factors to arrive at an appropriate sentence. The sentencing court must also "remain cognizant of them throughout the sentencing process." Gall, 552 U.S. at 50 n.6.

III. Guidelines Calculation

The government agrees with Probation's calculation of the defendant's offense level under the United States Sentencing Guidelines ("U.S.S.G. or "Guidelines") as set forth in the originally issued PSR, which is set forth below.

| | |
|---|---|
| Base Offense Level (§ 2M5.2(a)(1)) | 26 |
| Total: | 26 |
| Less: Acceptance of Responsibility (§§ 3E1.1(a), (b)) | -3 |
| Adjusted Total: | 23 |

PSR ¶¶ 29-39.

The adjusted total offense level is 23, which, based on a criminal history category of I, carries an advisory Guidelines range of 46 to 57 months' imprisonment. Id. ¶ 71. The defendant stipulated to this Guidelines calculation in the plea agreement.

The defendant argues in his sentencing memorandum for application of the zero-point offender reduction that is available to some defendants with no prior criminal history, see U.S.S.G. § 4C1.1; Defendant's Sentencing Memorandum ("Deft. Mem."), ECF No. 47, at 11. The Probation Department's (now-revoked) Second Addendum to the PSR agreed with the defendant in applying this reduction.

The government disagrees with the defendant and agrees with the Probation Department's current position that the zero-point offender reduction should *not* be applied. See U.S.S.G. § 4C1.1. That reduction is inapplicable here because the defendant did "possess, receive, purchase, transfer [and] sell" a firearm in connection with the offense. U.S.S.G. § 4C1.1(a)(7); see U.S.S.G. § 1B1.1 commentary n.1(H) (defining "firearm" to include "the frame or receiver" of a gun).

IV. A Sentence Between 46 and 57 Months' Imprisonment is Appropriate

The government respectfully submits that a sentence within advisory Guidelines range of 46 to 57 months' imprisonment is sufficient, but not greater than necessary, to achieve the goals of sentencing. The need for such a sentence is underscored by the sentencing factors articulated in 18 U.S.C. § 3553(a), including the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for deterrence.

The conduct here is serious. The defendant shipped to individuals in Russia specialized weapons components and accessories, including magazines, rifle stocks, and night vision helmet mounts. He knew that these components were export-controlled and that he was not permitted to send them to foreign end-users without a license. Accordingly, he tried to conceal them amid innocuous items and omitted them from shipping manifests accompanying his packages.

The United States controls exports like these for a reason – because the government seeks to keep military-grade technology out of our adversaries' hands. The defendant knew of and flouted these restrictions. That conduct warrants a significant sentence.

The defendant argues that his status as a foreign national warrants a reduced sentence, citing a number of pre-Booker decisions from other Circuits. Deft. Mem. 46-47. However, the Second Circuit has counseled against considering the collateral consequences of a defendant's immigration as a basis for leniency. See United States v. Duque, 256 F. App'x 436, 437–38 (2d Cir. 2007) (summary order) ("The collateral effects of deportability—*e.g.,* (1) the unavailability of preferred conditions of confinement, and (2) the possibility of an additional period of detention pending deportation following the completion of sentence—generally do not justify a departure from the Guidelines range. While it is true that pertinent collateral consequences of a defendant's alienage might serve as a valid basis for departure if those consequences were extraordinary in nature or degree, the collateral effects at issue here are run of the mill." (internal citations and quotation marks omitted)). See also Gil v. United States, No. 02-CR-0757, 2010 WL 3940527, at *1 (E.D.N.Y. Oct. 6, 2010) (following Duque in denying motion for adjustment of sentence on grounds of deportability); cf. United States v. Wills, 476 F.3d 103, 108–09 (2d Cir. 2007) (abrogated on other grounds, United States v. Cavera, 550 F.3d 180, 191) (fact that defendant will be deported after serving sentence is not a ground for leniency). Here, as in Duque, the collateral effects to which the defendant points are no more than "run of the mill."

Notwithstanding the above, the defendant's assistance to the government warrants consideration by the Court. Specifically, pursuant to United States v. Fernandez, 443 F.3d 19 (2d Cir. 2006), the government informs the Court of assistance provided by the defendant that falls short of the standard under which the government would file a letter pursuant to U.S.S.G. § 5K1.1, but that the Court may consider under 18 U.S.C. § 3553(a). The defendant proffered with the government twice following his arrest and provided helpful statements regarding the charged scheme. The defendant described at length his background as a recreational sharpshooter in Russia and his practice, after having moved to the United States, of buying and reshipping U.S. firearm components on behalf of other sport shooters still in Russia. The information provided by the defendant was corroborated by other information and was deemed generally credible. However, it generally confirmed information already known to the government or otherwise could not be used to further any investigation or prosecution. The defendant's assistance therefore did not meet the standard of "substantial assistance in the investigation or prosecution of another person," as contemplated under U.S.S.G. § 5K1.1. Nevertheless, his criminal conduct is counterbalanced by his actions since he was arrested. The defendant should receive some additional consideration for his prompt acceptance of responsibility and his attempt to assist the government in its investigation and prosecution.

V. Conclusion

For the foregoing reasons, the government respectfully requests that the Court impose a sentence between 46 and 57 months' imprisonment.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Alexander Mindlin
Assistant U.S. Attorney
(718) 254-6433

cc: Clerk of Court (LDH) (By ECF and Email)
George Grasso, Esq. (by ECF and Email)
United States Probation Officer (By Email)