UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                      :
UNITED STATES OF AMERICA,                             :
                                                      :
                                                      :
                                                      :    **MEMORANDUM & ORDER**
            v.                                        :    21-CR-99 (WFK)
                                                      :
VLADIMIR KUZNETSOV,                                   :
                                                      :
                Defendant.                            :
------------------------------------------------------------X

**WILLIAM F. KUNTZ, II, United States District Judge:**

On April 27, 2021, Defendant Vladimir Kuznetsov ("Defendant") entered a plea of guilty to the sole count of an Information, charging Defendant with exporting and attempting export to rifle parts and accessories designated as defense articles under the United States Munitions List from the United States to Russia in violation of 22 U.S.C. §§ 2778(b)(2) and (c). Plea Agreement ¶ 1, ECF No. 35. The Court now sentences Defendant and provides a complete statement of reasons pursuant to 18 U.S.C. § 3553(c)(2) of those factors set forth by Congress in 18 U.S.C. § 3553(a). For the reasons set forth below, Defendant is hereby sentenced to 46 months of imprisonment, to be followed by two years of supervised release with special conditions. Forfeiture is ordered in accordance with the Order of Forfeiture. ECF No. 42. Defendant is required to pay a mandatory special assessment of $100.00.

## I. BACKGROUND

On April 27, 2021, Defendant waived indictment and pled guilty to the sole count of an

Information charging him with violating the Arms Export Control Act ("AECA"). Plea

Agreement ¶ 1, ECF No. 35. Specifically, the Information alleges Defendant knowingly and

willfully exported and attempted to export controlled defense articles, specifically rifle parts and

accessories, from the United States to Russia without first obtaining a license as required by law,

in violation of 22 U.S.C. § 2778(b)(2) and (c), 22 C.F.R. §§ 121 and 127, and 18 U.S.C. § 2. *Id.*;

Information ¶ 3, ECF No. 33.

### A.    Regulatory Framework

*The United States Munitions List*:  Exports of defense related articles are regulated by the AECA, 22 U.S.C. § 2778, which authorizes the President of the United States to control the import and export of defense articles and establish a United States Munitions List ("USML") identifying and defining those articles.  Presentence Investigation Report ("PSR") ¶ 5, ECF No. 38.  Pursuant to a delegation of authority by the President, the United States Department of State, Directorate of Defense Trade Controls ("DDTC") promulgated regulations under the AECA which established the USML, designated all items on the USML "defense articles," and required an export license for the export of any items on the USML.  *Id.* ¶ 6, *see also* 22 C.F.R. § 120 *et seq*.  Because these regulations promulgated pursuant to the AECA are known as International Traffic in Arms Regulations ("ITAR"), articles under those regulations are deemed "ITAR-controlled."  PSR ¶¶ 6, 13, 16, 19.

*The Commerce Control List*:  The Export Administration Act ("EEA"), while in effect, regulated the export of goods, technology, and software from the United States.  *Id.* ¶ 8.  Pursuant to the EEA, the Department of Commerce's ("DOC's") Bureau of Industry Security ("BIS") promulgated Export Administration Regulations ("EAR") which restrict which goods can be exported outside of the United States.  *Id.*  Through the EAR, the BIS controls exports by placing restrictions on the export of items that could significantly contribute to the military potential or nuclear proliferation of other nations to the detriment of the United States.  *Id.* ¶ 9.  The United States Commerce Control List ("CCL") contains the most sensitive items subject to EAR controls.  *Id.*  In 2001, the EEA lapsed.  *Id.* ¶ 8.  That same year, in light of the lapse, the President issued an executive order declaring a national emergency with respect to the unusual and extraordinary threat to the United States and foreign policy.  *Id.*  Specifically, the President ordered EEA provisions to remain in force despite the formal expiration of the EEA.  *Id.*

**B.       The Instant Offense**

Special Agents with the United States Department of Homeland Security, Homeland Security Investigations, in conjunction with the Department of Commerce, the United States Postal Inspection Service, the Department of Defense, Criminal Investigative Service, and the Department of Homeland Security, Customs and Border Protection, led the investigation into the instant offense. *Id.* ¶ 4. In 2017, those agents discovered Defendant was attempting to sell export-controlled weapon parts to individuals outside of the United States. *Id.* ¶ 11.

In May and July of 2017 and April and May of 2018, federal agents detained and seized packages sent by Defendant to individuals in Russia containing ITAR-controlled articles on the USML as well as items on the CCL that Defendant did not have a license to export, including various specialized firearm parts and accessories and helmet mounts for night vision goggles. *Id.* ¶¶ 12-24. In an effort to conceal the true nature of the exports, the rifle parts were packaged with innocuous items such as clothes and personal hygiene tools. *Id.* ¶¶ 12, 15, 18, 22. The packages were then falsely labeled as containing only those mundane items. *Id.* Review of Defendant's email also revealed communications between Defendant and a Russian individual discussing the shipment of export-controlled items to Russia. *Id.* ¶ 25. Agents also discovered numerous deposits and wire transfers to Defendant and his wife from an individual in Russia and other co-conspirators. *Id.*

On August 1, 2019, the Government filed a then-sealed Complaint against Defendant, alleging Defendant exported, attempted to export, and conspired to export items on the USML without a license in violation of 22 U.S.C. § 2778 and 18 U.S.C. §§ 371 and 2, and items on the CCL without a license in violation of 50 U.S.C. § 1705 and 18 U.S.C. § 2. Compl., ECF No. 1.

On April 27, 2021, Defendant waived indictment and entered a plea of guilty to the sole count of an Information charging him with violating the AECA by knowingly and willfully

exporting and attempting to export defense articles on the USML, specifically rifle parts and accessories, from the United States to Russia without first obtaining a license from the DDTC, in violation of 22 U.S.C. § 2778(b)(2) and (c), 22 C.F.R. §§ 121 and 127, and 18 U.S.C. § 2.  Plea Agreement ¶ 1, ECF No. 35; Information ¶ 3, ECF No. 33.  As part of his plea agreement, Defendant agreed not to file an appeal or otherwise challenge his sentence if the Court imposed a term of imprisonment of 63 months or below.  Plea Agreement ¶ 4.

## II.  LEGAL STANDARD

18 U.S.C. § 3553 outlines the procedures for imposing sentence in a criminal case.  The "starting point and the initial benchmark" in evaluating a criminal sentence is the Guidelines sentencing range.  *Gall v. United States*, 552 U.S. 38, 49 (2007).  If and when a district court chooses to impose a sentence outside of the Sentencing Guidelines range, the court "shall state in open court the reasons for its imposition of the particular sentence, and . . . the specific reason for the imposition of a sentence different from that described" in the Guidelines.  18 U.S.C. § 3553(c)(2).  The court must also "state[] with specificity" its reasons for so departing "in a statement of reasons form."  *Id.*

"The sentencing court's written statement of reasons shall be a simple, fact-specific statement explaining why the guidelines range did not account for a specific factor or factors under § 3553(a)."  *United States v. Davis*, 08-CR-0332, 2010 WL 1221709, at *1 (E.D.N.Y. Mar. 29, 2010) (Weinstein, J.).  Section 3553(a) provides a set of seven factors for the Court to consider in determining what sentence to impose on a criminal defendant.  The Court addresses each in turn.

## III.  ANALYSIS

### A. The Nature and Circumstances of the Offense and the History and Characteristics of Defendant

The first § 3553(a) factor requires the Court to evaluate "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1).

  1.  Family and Personal Background

Defendant was born on October 29, 1961 in Moscow, Russia to Yuriy Kuznetsov and Yelena Kuznetsova. *Id.* ¶ 47. Defendant had an unremarkable childhood in the Soviet Union, where his parents worked long hours but were well compensated. *Id.* ¶ 49. Defendant has one sister who still resides in Moscow. *Id.* ¶ 48. Defendant reported the two have not been in contact since the death of his parents. *Id.*

Defendant married his first wife, Yelena Veselova, in 1983 in Moscow. *Id.* ¶ 51; First Addendum to the PSR at 1, ECF No. 40. The two divorced in 1993 but share one son, Dmitriy Kuznetsov. PSR ¶ 51. Defendant maintained contact with his son, who resides in Moscow, until the death of Defendant's parents around 2018 or 2019. *Id.* ¶¶ 47, 51. In 2002, Defendant had a second son, Ivan Kuznetsov, with a different woman. *Id.* ¶ 52. Ivan resides in Moscow with his mother. *Id.* In 2009, Defendant married Liliya Aronova in Moscow. *Id.* ¶ 53. The two had a son, also named Ivan Kuznetsov, who resides with his mother in Moscow. *Id.* Defendant and Ms. Aronova divorced in 2012. *Id.* Defendant has no contact with the child he shares with Ms. Aronova. *Id.*

Defendant emigrated from Russia to the United States in 2012. *Id.* ¶ 49. Defendant is a conditional permanent resident of the United States. *Id.* Defendant lived in Brooklyn for the first six years he was in the United States, but moved to Pennsylvania in 2018. *Id.* ¶ 50. In 2015, Defendant married his current wife, Marina Maller, in Staten Island, New York. *Id.* ¶ 54. Ms. Maller splits her time between Defendant's home in Pennsylvania and New York. *Id.* ¶ 50. Ms. Maller, who has an adult son from a previous relationship, is aware of the instant offense

and remains supportive of Defendant.  *Id.* ¶ 54.

### 2.    Educational and Employment History

In 1978, Defendant graduated from the equivalent of high school in Moscow.  *Id.* ¶ 59.

In 1984, he earned the equivalent of a bachelor's degree from Moscow Topographic College.  *Id.*

From 1984 to 1994, Defendant worked at a museum within Moscow State University.  *Id.*

¶ 64.  In 1994, Defendant opened a business in Moscow through which he owned and operated a

restaurant and grocery store.  *Id.* ¶ 63.  Defendant left this business to his ex-wife, Ms. Aronova,

when he immigrated to the United States in 2012.  *Id.*

In 2013, Defendant opened a restaurant in Manhattan, New York.  *Id.* ¶ 62.  Defendant

closed the restaurant, which was not profitable, in 2014.  *Id.*  Defendant has been self-employed

as a handyman since moving to Pennsylvania in 2018.  *Id.* ¶ 61.  Defendant reported he is

primarily supported by his wife.  *Id.*

### 3.    Prior Convictions

Defendant has no prior convictions.  *Id.* ¶ 41.

### 4.    Physical and Mental Health

The United States Probation Department ("Probation") notes Defendant has high blood

pressure and back pain, but is not currently taking medication or receiving treatment.  *Id.* ¶ 56.

However, as an exhibit to defense counsel's sentencing submission, defense counsel submitted a

letter and report from Defendant's doctor detailing various medical conditions, including

scoliosis, hip and back pain, muscle weakness, muscle spasms, and difficulty walking.  ECF Nos.

47-1, 47-2.  According to those submissions, Defendant is currently prescribed medication to

treat these conditions.  *Id.*

Defendant reported no mental or emotional health issues.  PSR ¶ 57.

5.      Substance Abuse

Defendant reported no history of substance abuse.  *Id.* ¶ 58.  Defendant consumes alcohol, but not in excess.  *Id.*

6.      Nature and Circumstances of the Offense

The Court's previous statements make clear the nature and circumstances surrounding the instant offense.  *See supra* Part I.

**B.      The Need for the Sentence Imposed**

The second § 3553(a) factor instructs the Court to consider "the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."  18 U.S.C. § 3553(a)(2).

The Court's sentence recognizes the seriousness of Defendant's offense, which involved shipping ITAR-controlled defense articles on the USML to individuals in Russia without first obtaining licensing.  Defendant knew he was prohibited from sending these weapons parts and accessories to Russia without a license, and chose to do so anyway – shipping them with innocuous items and in improperly labeled packages to conceal their true nature.  Defendant purposefully evaded federal restrictions meant to prevent U.S. adversaries from accessing specialized military technologies.  *See supra* Part I.  The Court's sentence will deter others from engaging in similar acts and justly punishes Defendant for his crimes.

**C.      The Kinds of Sentences Available**

The third § 3553(a) factor requires the Court to detail "the kinds of sentences available" for Defendant.  18 U.S.C. § 3553(a)(3).

Defendant pled guilty to the sole count of the Information, charging him with exporting and attempting to export rifle parts and accessories, designated as defense articles on the USML, from the United States to Russia without a license in violation of U.S.C. §§ 2778(b)(2) and (c).

This offense carries a maximum term of imprisonment of 20 years and no minimum term of imprisonment.  22 U.S.C. § 2778(c).  Defendant also faces a maximum term of supervised release of three years.  18 U.S.C. § 3583(b).  If a condition of release is violated, Defendant may be sentenced to up to two years without credit for pre-release imprisonment or time previously served on post-release supervision.  18 U.S.C. § 3583(e).  Pursuant to 18 U.S.C. § 3561(c)(1), Defendant is eligible for a term of probation of not less than one nor more than five years.  If a term of probation is imposed, a fine, restitution, or community service must be imposed, unless extraordinary circumstances exist.  18 U.S.C. § 3563(a)(2).

Defendant faces numerous other penalties.  Defendant faces a maximum fine of $1,000,000.00.  22 U.S.C. § 2778(c); 18 U.S.C. § 3571(b)(1).  However, Defendant's financial profile indicates he is unable to pay a fine.  PSR ¶ 69.  The Court is required to impose a mandatory special assessment of $100.00 pursuant to 18 U.S.C. § 3013(a)(2)(A).  Defendant faces forfeiture in accordance with the Order of Forfeiture.  ECF No. 42; *see also* 18 U.S.C. § 982(a)(1)(C); 22 U.S.C. § 401; 21 U.S.C. § 853(p); 28 U.S.C. § 2461(c); Plea Agreement ¶ 6.

### D.    The Kinds of Sentence and the Sentencing Range Established for Defendant's Offense

The fourth § 3553(a) factor requires the Court to discuss "the kinds of sentence and the sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines." *Id.* § 3553(a)(4)(A).

The applicable Guidelines provision for violations of 22 U.S.C § 2778, as contained in the sole count of the Information, is U.S.S.G. §2M5.2, which provides for a base offense level of

26.  Defendant's timely acceptance of responsibility results in a three-level reduction pursuant to U.S.S.G. §3E1.1, resulting in a total adjusted offense level of 23.  Both Probation and the Government agree with this calculation.  PSR ¶¶ 30-39; Government Sentencing Memorandum ("Gov't Mem.") at 3, ECF No. 50; *see also* Plea Agreement ¶ 2.

Defense counsel argues Defendant should be eligible for a zero-point offender reduction of two points pursuant to U.S.S.G. §4C1.1, resulting in a total adjusted offense level of 21. Defense Sentencing Memorandum ("Def. Mem.") at 10-11, ECF No. 47.  However, pursuant to U.S.S.G. §4C1.1(7), only a defendant who "did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense" is eligible for this reduction.  As the Government and Probation correctly point out, under U.S.S.G. §1B1.1, Application Note 1(H), a "firearm" is defined to include the "frame or receiver" of a gun.  Gov't Mem. at 3; Third Addendum to the PSR at 1, ECF No. 49.  Because some of the items involved in the instant offense are the equivalent of receivers or frames, Defendant is not eligible for this reduction. Gov't Mem. at 3; Third Addendum to the PSR at 1; ECF No. 49; *see also* 27 C.F.R. § 478.12.

Defendant has no prior criminal convictions, meaning he has a criminal history score of zero.  PSR ¶¶ 41-42; *see also* U.S.S.G. §4A1.1.  This results in a criminal history category of I. U.S.S.G. §5A.  All parties agree with this calculation.  PSR ¶ 71; Gov't Mem. at 3; Def. Mem. at 2; *see also* Plea Agreement ¶ 2.

A criminal history category of I and a total offense level of 23 result in a Guidelines sentencing range of between 46-57 months.  U.S.S.G. §5A.  Both the Government and Probation agree with this calculation.  PSR ¶ 71; Gov't Mem. at 3; *see also* Plea Agreement ¶ 2.  The base offense level of 21 that defense counsel argues for would result in a Guidelines range of 37 to 46

months of imprisonment.  U.S.S.G. §5A. [1]  However, as explained above, the zero-point offender reduction does not apply to Defendant.  Therefore, the correct Guidelines sentencing range is between 46 and 57 months.

The parties' recommendations as to an appropriate sentence vary.

Probation recommends a sentence of 46 months of imprisonment followed by two years of supervised release with special conditions.  Probation Recommendation at 1, ECF No. 38-1. Probation also recommends the imposition of the mandatory $100.00 Special Assessment as well as forfeiture in accordance with the Order of Forfeiture.  *Id.*  Probation recommends Defendant be excused from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d). *Id.*  Probation argues a sentence of 46 months is appropriate because "there are no aggravating or mitigating factors to consider in this case, and no bases for departure."  *Id.* at 2.  Probation notes a sentence of 46 months would provide "just punishment" and "adequate deterrence" for the offense, which "involved shipping and attempting to ship export-controlled firearms parts to Russia over a two-and-a-half year period."  *Id.*

Defense counsel requests the Court impose a non-Guidelines sentence of time served.[2] Def. Mem. at 11.  Defense counsel argues a sentence of time-served is appropriate given Defendant's cooperation with the Government, his non-violent offender status, his health, his "long history of education and employability," and his "full acceptance of responsibility."  *Id.* at 7-8.  Defense counsel argues "there is nothing to suggest that Mr. Kuznetsov poses any threat or risk of committing another criminal offense" and therefore a longer sentence is unnecessary.  *Id.* at 8.  Defense counsel asks the Court to take into consideration that Defendant is "a reliable

---

[1] Because defense counsel does not provide an alternate Guidelines range, this calculation was done by the Court.

[2] Notably, Defendant has been out on bond since his arraignment in 2019.  ECF No. 4.

husband and hard-working individual whose criminal activities were just an unfortunate aberration from his otherwise law-abiding life." *Id.* Finally, defense counsel asks the Court to consider Defendant's status as a foreign national as a mitigating factor, noting that "as a permanent resident potentially subject to deportation," Defendant will be ineligible for early release programs and other similar programs available to United States citizens, meaning he will "serve more time in Federal prison than most citizens." *Id.* at 10. Defense counsel cites a number of pre-*Booker*, out-of-circuit cases for its argument that a court can consider Defendant's foreign national status and apply a downward variance "for the severe or exceptional hardship in conditions of confinement for deportable aliens." *Id.* at 9-10 (citing *United States v. Smith*, 27 F.3d 649, 655 (D.C. Cir. 1994), *United States v. Charry Cubillos*, 91 F.3d 1342, 1344 (9th Cir. 1996), *United States v. Arowasaye*, 112 Fed. App'x. 528, 532 (7th Cir. 2004), and *United States v. Ngatia*, 477 F.3d 496, 502 (7th Cir. 2007)).

The Court has read and considered the letters submitted by Defendant's supporters. ECF No. 47-4. These letters describe Defendant as an honest, compassionate, and selfless man with a strong moral compass. *Id.* Many of the letters discuss Defendant's commitment to the well-being of those around him, as well as his ability to foster a sense of community wherever he goes. *Id.* The Court appreciates what Defendant's advocates have said on his behalf.

The Government recommends a Guidelines sentence of between 46 and 57 months of imprisonment. Gov't Mem. at 3. In arguing for a Guidelines sentence, the Government highlights the seriousness of the offense, which involved "shipp[ing] to individuals in Russia specialized weapons components and accessories, including magazines, rifle stocks, and night vision helmet mounts" knowing "that these components were export-controlled and that he was not permitted to send them to foreign end-users without a license." *Id.* The Government notes

11

the "United States controls exports like these for a reason – because the government seeks to keep military-grade technology out of our adversaries' hands. The defendant knew of and flouted these restrictions." *Id.* at 4. The Government does not believe Defendant's status as a foreign national warrants a reduced sentence, and notes the Second Circuit "has counseled against considering the collateral consequences of a defendant's immigration as a basis for leniency." *Id.* (citing *United States v. Duque*, 256 F. App'x 436, 437-38 (2d Cir. 2007)). The Government argues caselaw from this circuit makes clear that departures are not warranted where, as here, "the collateral consequences of a defendant's alienage . . . are run of the mill." *Id.*

The Government does acknowledge Defendant's assistance to the Government and asks the Court to take that assistance into consideration. *Id.* Specifically, the Government explains "defendant proffered with the government twice following his arrest and provided helpful statements regarding the charged scheme" and "described at length his background as a recreational sharpshooter in Russia and his practice, after having moved to the United States, of buying and reshipping U.S. firearm components on behalf of other sport shooters still in Russia." *Id.* While the Government notes the information Defendant provided was already known to the Government and "could not be used to further any investigation or prosecution," Defendant should nonetheless "receive some additional consideration for his prompt acceptance of responsibility and his attempt to assist the government in its investigation and prosecution." *Id.*

This Court appreciates the sentencing arguments raised by all parties and has considered each of these arguments in turn.

### E. Pertinent Policy Statement(s) of the Sentencing Commission

The fifth § 3553(a) factor requires the Court to evaluate "any pertinent policy statement . . . issued by the Sentencing Commission." 18 U.S.C. § 3553(a)(5).

The parties have not drawn the Court's attention to any applicable policy statements. Finding none on its own, the Court proceeds to the next § 3553(a) factor.

### F.    The Need to Avoid Unwarranted Sentence Disparities

The sixth § 3553(a) factor requires the Court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."  18 U.S.C. § 3553(a)(6).

For the reasons stated in this Memorandum and Order, and considering the other six § 3553(a) factors, the Court's sentence avoids unwarranted sentence disparities.

### G.    The Need to Provide Restitution

Finally, the seventh § 3553(a) factor requires the Court to touch upon "the need to provide restitution to any victims of the offense."  18 U.S.C. § 3553(a)(7).

Restitution is not applicable in this case.

## IV.  CONCLUSION

For the reasons set forth above, the Court imposes a sentence of 46 months of imprisonment; two years of supervised release with both the standard conditions of supervised release and special conditions; and the mandatory $100.00 special assessment.  Forfeiture is ordered in accordance with the Order of Forfeiture at ECF No. 42.  This sentence is sufficient but no greater than necessary to accomplish the purposes of § 3553(a)(2).  The Court does not impose a fine given Defendant's apparent inability to pay.  The Court excuses Defendant from the mandatory drug testing provisions of 18 U.S.C. §§ 3563(a)(5) and 3583(d).

The Court expressly adopts the factual findings of the Presentence Investigation Report and Addenda thereto, ECF Nos. 38, 40, 48, 49, to the extent those findings are not inconsistent with this opinion and imposes the standard and special conditions of release proposed by the Probation Department.

13

**SO ORDERED.**



HON. WILLIAM F. KUNTZ, II
UNITED STATES DISTRICT JUDGE

Dated: April 30, 2024
Brooklyn, New York